# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 8414 | **DATE** | 3/4/2004 |
| **CASE TITLE** | Halim vs. Great Gatsby's Auction Gallery, Inc | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** Gatsby's motion to stay the proceedings pending arbitration is granted, while its motions (Doc 3-1) to dismiss are denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 0 5 2004 | 11 |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| SCT | courtroom deputy's initials | U.S. DISTRICT COURT | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
MAR 0 5 2004

| | |
|---|---|
| CAMEEL A. HALIM,  )  )  Plaintiff,  )  )  vs.  )  )  THE GREAT GATSBY'S AUCTION  )  GALLERY, INC.,  )  )  Defendant.  ) | 03 C 8414 |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on Defendant The Great Gatsby's Auction Gallery, Inc.'s ("Gatsby") motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), (3), and (6). For the reasons set forth below, the motion is granted in part and denied in part.

### BACKGROUND

Because this is a motion to dismiss, we accept all well pleaded facts and allegations in the complaint as true and construe all inferences in favor of the Plaintiff. Thompson v. Illinois Dep't of Prof'l Regulation, 300 F.3d 750, 753 (7th Cir. 2002).

Gatsby, a Georgia corporation based in Atlanta, is in the business of holding auctions and in 2002 advertised in the nationally published *Antiques and Arts Magazine* that it would be holding the "Wallace Estate Auction" (the "Auction"). The Auction was to take place September 20-22, 2002, in Fayetteville, Tennessee. A few days before the Auction commenced, Plaintiff Cameel Halim ("Halim"), a resident of Kenilworth, Illinois, read Gatsby's advertisement and requested that it send him a catalogue of the goods to be auctioned. Gatsby then express mailed Halim a catalogue that described the provenance, rarity, size, quality, appearance, and value of the items available for auction, which included many antiques, decorative home furnishings, and other finery.

Upon receiving Gatsby's catalogue, Halim contacted Gatsby's Atlanta office and expressed an interest in participating in the Auction via telephone. Because Halim had not previously participated in a Gatsby auction, Gatsby informed Halim that he was required to complete a credit application, an Agreement to Participate in Auction (the "Auction Agreement"), an Absentee Telephone Bid Form, as well as tender a $50,000 deposit. Halim fulfilled all of these requirements. Prior to the Auction, Halim spoke to Ted Tzavaras, an agent of Gatsby, and inquired specifically about the dimensions of a Nineteenth Century clock that Halim desired to place in a certain location in his

home that could only accommodate items of a particular size. Tzavaras assured Halim that the clock's dimensions were as stated in the catalogue.

From September 20-22, 2002, Halim participated in the Auction over the telephone. Halim was the high bidder on forty-two items and immediately following the Auction's conclusion, he wired in excess of $500,000 to Gatsby in Atlanta. When his purchased items arrived to Halim, he discovered that sixteen of the items did not conform to their description in the catalogue. Halim asserts that many of these items are fakes, of the wrong dimensions, or not from the time period or particular craftsman as described in the catalogue.

On October 2, 2002, Halim telephoned Tzavaras concerning the allegedly nonconforming items. According to Halim, Tzavaras told him that Gatsby was a respectable auction house that does not auction fakes and represented that Gatsby would issue a full refund on any item proven to be a fake. Halim states that he and Tzavaras reached an agreement where Gatsby would accept the return of any misrepresented items and give Halim a refund and pay for costs associated with their verification and return. Halim considers this agreement to be a novation to the earlier Auction Agreement, a contract entered into between Gatsby and Halim. After speaking with Tzavaras, Halim returned what had been represented as an antique Faberge clock to Gatsby, for which Halim received a $55,000 refund. Halim later discovered that

another item, the Nineteenth Century clock whose dimensions Halim had previously sought to verify through Tzavaras, was of different dimensions than as represented in the catalogue and did not fit into the desired location within his home. Upon this discovery Halim again called Tzavaras, who allegedly stated that Gatsby would accept the clock and refund the purchase price if it did not meet the dimensions as described in the catalogue. However, when Halim returned the clock to Gatsby, he received no refund and after five months the clock was sent back to Halim.

Halim then had the remainder of the allegedly misrepresented items appraised by experts and, at Gatsby's request, forwarded copies of the appraisals to Tzavaras. Nevertheless, Gatsby has refused to accept the return of the items and will not refund the purchase price of the items, an amount of $389,160.

On October 9, 2003, Halim filed a four-count complaint against Gatsby in the Circuit Court of Cook County alleging (1) breach of novation, (2) fraudulent misrepresentation, (3) negligent misrepresentation, and (4) breach of express warranty. On November 21, 2003, Gatsby removed the case to this court, citing diversity jurisdiction, pursuant to 28 U.S.C. §§ 1332(a)(1) and 1441.

Gatsby now moves to dismiss Halim's complaint on four grounds. First Gatsby moves to dismiss for lack of personal jurisdiction. Gatsby next argues that this court is an inappropriate venue for this action. Gatsby also asserts that Halim is bound to

defer to a binding arbitration provision in the Auction Agreement. Gatsby lastly contends that Halim's misrepresentation and breach of warranty counts fail to state claims upon which relief can be granted.

## LEGAL STANDARD

"The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990) (quoting Triad Assocs., Inc. v. Chicago Hous. Auth., 892 F.2d 583, 586 (7th Cir. 1989)). A complaint need only specify "the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002) (citing Beanstalk Group, Inc. v. AM General Corp., 283 F.3d 856, 863 (7th Cir. 2002)). Dismissal is proper only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). With these principles in mind, we now address the motion before us.

## DISCUSSION

**Personal Jurisdiction and Venue**

Because they are threshold questions that pertain to whether this court is allowed to adjudicate this dispute in the first place, we will first address Gatsby's contentions that lack of personal jurisdiction and improper venue respectively merit dismissal under

Federal Rules of Civil Procedure 12(b)(2) and (3). See Joy v. Hay Group, Inc., 2003 WL 22118930, *2 (N.D. Ill. 2003) (citing Frietsch v. Refco., Inc., 56 F.3d 825, 830 (7th Cir. 1995)).

To withstand a 12(b)(2) motion, a plaintiff must only make a prima facie showing that this court has personal jurisdiction over the defendant. Hyatt Int'l Corp. v. Coco, 302 F.3d 707, 713 (7th Cir. 2002). In analyzing personal jurisdiction, we consider all facts in the complaint as true unless refuted by the defendant in an affidavit. Joy at *2. A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have such jurisdiction. RAR Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1275 (7th Cir. 1997). The Illinois "long-arm" statute, 735 ILCS 5/2-209(c), permits Illinois courts to exercise personal jurisdiction over a defendant on any basis allowed under the due process clauses of the federal and Illinois Constitutions. Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 939 (7th Cir. 2000). While the two constitutions do not necessarily contain the same guarantees of due process, Rollins v. Ellwood, 141 Ill. 2d. 244 (Ill. 1990), the Seventh Circuit has repeatedly suggested that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." Hyatt at 715.

The federal test for determining personal jurisdiction begins with the now familiar requirement that the defendant must have "purposefully established minimum contacts within the forum state," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985), "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1946) (citation omitted). This "minimum contacts" analysis requires the plaintiff to demonstrate that the defendant "should reasonably anticipate being haled into court [in the forum State]," Burger King at 474 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)), because the defendant has "purposefully availed itself of the privilege of conducting activities" there. Burger King at 475 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

Halim argues that sufficient minimum contacts exist between Gatsby and Illinois on two grounds, the first being the connection that was established as a result of the alleged novation to the Auction Agreement. Halim pleads that a novation was established during the October 2, 2002, conversation where Tzavaras allegedly promised to refund any items that did not match the descriptions or meet the specifications of the auction catalogue.[1] Surrounding this novation, telephone calls,

---

[1] Halim pleads that the consideration for this contract was Gatsby's desire to protect its business relationship and good reputation with Halim, as well as to avoid
(continued...)

faxes, and mailings were made between Halim in Illinois and Gatsby in Georgia. When Halim returned a Faberge-style clock to Gatsby that had turned out to be a fake, Gatsby refunded Halim the $55,000 purchase price. Halim argues that because "Illinois has an interest in providing a forum for disputes resulting from a business relationship formed between an Illinois resident and a nonresident," Celozzi v. Boot, 2000 WL 1141568, *4 (N.D. Ill. 2000), it would be foreseeable to Gatsby that litigation could ensue as a result of its novation with Halim. Gatsby counters that the Auction Agreement was drafted and executed in Atlanta by Gatsby, that the Auction took place in Tennessee, the goods in dispute were located and shipped from Tennessee, and that the purchase of the items took place in Tennessee. These facts may lend credence to the notion that the requisite minimum contacts were not created as a result of the contract formed through the Auction Agreement. However, Halim is claiming that the contract in question is the October 2, 2002, novation between Halim and Tzavaras. We agree with Halim that entering into the novation would make it foreseeable to Gatsby that it could potentially be haled into Illinois courts if disputes arose surrounding the authenticity and representation of, and the right to refund for the antiques in question.

---

[1] (...continued)
future litigation. Therefore, because this is a motion to dismiss, we will preliminarily accept Halim's claim that a contract existed in the form of a novation to the Auction Agreement.

-8-

Because of the telephone, fax, and mail correspondence in relation to the alleged novation, as well as the subsequent Illinois-Georgia transaction of goods and money in accordance with its alleged terms, we find that sufficient minimum contacts exist as to Halim's breach of novation count. Even if the contract in question was the Auction Agreement, we could still find that by seeking to benefit from the Illinois market by arranging for Halim to participate in the Auction, Gatsby purposefully availed itself of the privilege of conducting business in the state and could have anticipated being haled into its courts. See Balaban v. Wescott, 1996 WL 599722, *3 (E.D.N.Y. 1996).

Halim next contends that personal jurisdiction in Illinois is proper because the injury that allegedly resulted from Gatsby's misrepresentation torts occurred in Illinois. Halim claims that the injuries that he complains of occurred in Illinois when he discovered that certain items purchased in the Auction were not nearly as valuable as they had been represented by Gatsby. The Seventh Circuit has addressed the question of which state a tort occurs in for the purpose of personal jurisdiction inquiries applying Illinois law:

> There is no tort without injury (citations omitted), and the state in which the injury (and therefore the tort) occurs may require the wrongdoer to answer for its deed even if events were put in train outside its borders. A wrong does not become a "tort" until an injury has occurred (speeding is wrongful, but not tortious, if no one is injured), and the location of the injury therefore is vital to understanding where the tort occurred . . . there can be no doubt after Calder v. Jones, 465 U.S. 783 (1984), that *the state*

*in which the victim of a tort suffers the injury may entertain a suit against the accused tortfeasor.*

Janmark, Inc. v. Reidy, 132 F.3d 1200, 1202 (7th Cir. 1997) (emphasis added). It is clear that if Halim has successfully pleaded his misrepresentation claims, Illinois will have personal jurisdiction as to them over Gatsby.[2]

Gatsby contends that due to a clause in the Auction Agreement that reads that the items to be auctioned are sold "as is" and "without warranty or representation," Halim is precluded from bringing a claim of misrepresentation. The provision states that:

> 1. **Property Sold As Is without Warranty or Representation.** Bidder acknowledges and agrees that all property is sold "AS IS" or "WHERE IS", and neither [Gatsby] nor any consignor to [Gatsby] makes any warranties or representations of merchantability or of the correctness of any description or the physical condition, size, quality, rarity, importance, medium, providence or historical relevance of the property auctioned and sold. All references and descriptions of the property in any auction, flier or brochure and any oral statement made by the auctioneer or employee of [Gatsby] are intended for informational purposes only and should not be relied upon as existing, and do not create any warranty or representation by [Gatsby] or any consignor. BIDDERS ARE ADVISED BY [GATSBY] TO CAREFULLY INSPECT THE PROPERTY BEFORE BIDDING.

---

[2] Gatsby cites a variety of cases standing for the proposition that personal jurisdiction over a tort cannot solely be established by injury in the forum state. However, each of these cases was decided in advance of Janmark.

Pl. Compl. Ex. A, ¶ 1. Halim acknowledges this disclaimer clause but states that it does not invalidate his misrepresentation claims because it was waived. Halim argues that Gatsby waived this provision when it accepted the return of the allegedly misrepresented clock and refunded Halim $55,000. As further evidence of Gatsby's waiver of this provision, Halim points to Tzavaras' assurance that Gatsby would refund any items that turned out to be fakes or contrary to their descriptions in the auction catalogue. Notwithstanding the potential effect of the disclaimer clause, Halim has otherwise pleaded the requisite elements of fraudulent and negligent misrepresentation. See Board of Educ. of City of Chicago v. A, C and S, Inc., 131 Ill. 2d 428, 452 (Ill. 1989). Because at this stage in the proceedings, where we test the sufficiency of the complaint and do not decide the case on the merits, Gibson, 910 F.2d at 1520, we cannot conclusively say that as a matter of law that Gatsby did not engage in tortious misrepresentation. We will therefore accept Halim's allegations that the injury of Gatsby's tort occurred in Illinois. Under Janmark, this is satisfactory for this court to exercise personal jurisdiction over Gatsby.

Having determined that Illinois possesses personal jurisdiction over Gatsby, the question of venue is easily answered. In federal civil cases where subject matter jurisdiction is founded only in diversity of citizenship, venue is proper in a judicial district where any defendant resides, if all defendants reside in the same state.

28 U.S.C. § 1391(a)(1); Kavo Am. Corp. v. J.F. Jelenko & Co., 2000 WL 715602, *5 (N.D. Ill. 2000). For the purposes of venue, a corporate defendant is a resident of any judicial district where it would be subject to personal jurisdiction. 28 U.S.C. § 1391(c); Kavo at *5. If a state contains more than one judicial district, and the corporate defendant is subject to personal jurisdiction in the state, the defendant is deemed a resident for venue purposes of the district where it would be subject to personal jurisdiction, if that district were its own state. 28 U.S.C. § 1391(c); Kavo at *5. Halim was at all relevant times a resident of and present in Cook County, in the Northern District of Illinois (one of Illinois' three federal districts). Accordingly, our personal jurisdiction analysis would indicate that all of Gatsby's contacts were with the Northern District. Because Gatsby is a corporation and the sole defendant in this case, we must conclude that venue is proper and deny Gatsby's 12(b)(3) motion.

**Arbitration Clause**

Having determined that this court is an appropriate forum in which to bring the complaint, we will now address Gatsby's contention that the case should be stayed[3] due to the Auction Agreement's binding arbitration agreement, which reads:

---

[3] Gatsby's motion seeks to dismiss Halim's complaint on account of the arbitration clause. However, when a binding arbitration clause is successfully invoked, the effect is to stay the entire suit before the district court, as opposed to dismissal of the suit. 9 U.S.C. § 3; Pryner v. Tractor Supply Co., 109 F.3d 354, 361 (7th Cir. 1997). We will therefore treat this aspect of Halim's motion to dismiss as a motion to stay.

> **13. Binding Arbitration.** Bidder and [Gatsby] agree that except with respect to the enforcement of [Gatsby's] rights as to the disposition of the Collateral upon default in which [Gatsby] shall be entitled to institute whatever litigation it deems necessary, all disputes between bidder and [Gatsby] shall be resolved through binding arbitration before the American Arbitration Association ("AAA") pursuant to the AAA's commercial arbitration rules: provided, however, that all arbitration hearings shall be conducted before one (1) arbitrator selected pursuant to such Commercial Arbitration Rules and should be held in Atlanta, Georgia.

Pl. Compl. Ex. A, ¶ 13.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, indicates a strong federal policy in favor of the enforcement of private arbitration agreements. Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 225-26 (1987). According to the FAA, a written agreement to arbitrate "in a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; Moses H. Cone Mem'l Hosp. v. Mercury Construction, 460 U.S. 1, 24 (1983). Where a contract includes an arbitration clause, the clause creates a presumption that the dispute should be arbitrated, unless the party opposing arbitration can show that the clause is incapable of an interpretation that could cover the dispute at hand. AT & T Technologies, Inc v. Communications Workers of Am., 475 U.S. 643, 650 (1986). Halim does not contend that the Auction Agreement's arbitration

clause would not encompass the suit at hand. Instead, he argues that the provision was waived by Gatsby.

An otherwise enforceable arbitration clause in a contract may not be invoked if it is found to have been waived. Epstein v. Yoder, 391 N.E.2d 432, 437 (Ill. 1979); Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc., 50 F.3d 388, 390 (7th Cir. 1995). Waiver of a right to arbitrate can either be express or implied. Kostakos v. KSN Joint Venture No. 1, 491 N.E.2d 1322, 1325 (Ill. App. Ct. 1986); Cabinetree at 390. Halim offers three grounds that Gatsby impliedly waived its right to arbitrate: (1) Gatsby chose to litigate, rather than arbitrate, this case when it did not attempt to seek a stay either in state court or when it removed to this court; (2) Gatsby has asked this court to adjudicate by dismissing Halim's complaint; and (3) Gatsby chose to negotiate and accept the return of the $55,000 clock rather than take the dispute to arbitration. In support of his position that Gatsby impliedly waived its right to arbitrate, Halim cites two cases, the first being St. Mary's Medical Center of Evansville, Inc. v. Disco Aluminum Products Co., Inc., 929 F.2d 585 (7th Cir. 1992).

In St. Mary's, a hospital and a contractor entered into a construction contract that contained a binding arbitration clause. The hospital sued the contractor for breach of contract and the contractor answered the complaint without mentioning the arbitration clause. After ten months of litigation, the hospital amended its compliant to add a

second defendant. The contractor and the new defendant then filed a joint motion to dismiss that failed to mention the arbitration clause. At a status conference fifteen months into the litigation the contractor still had not raised the arbitration clause, and then did not do so until after the magistrate judge denied the motion to dismiss approximately nineteen months after the original complaint had been filed. The Seventh Circuit found that by actively participating in the litigation for almost ten months, the defendant "acted inconsistently with any intent to assert its right to arbitrate," and thus waived the right. St. Mary's, 969 F.2d at 589.

The second case cited by Gatsby advocating waiver is Cabinetree, 50 F.3d 388, where the plaintiff and defendant entered into a contract containing a binding arbitration clause. When the plaintiff sued in state court, the defendant removed to federal court. Around ten months later, with discovery well under way and a trial date set, the defendant then moved to enforce the arbitration clause. The Seventh Circuit held that by proceeding to discovery and preparing for trial, the defendant had chosen to invoke the judicial process rather than seek arbitration, and the right to arbitration was thereby waived. Id. at 390-91.

The factual posture of this case is quite different from either St. Mary's or Cabinetree. Rather than allowing months in the case to pass by before raising the arbitration issue, Gatsby brought it to our attention in its first responsive pleading. We

-15-

do not believe that Gatsby has chosen to invoke the judicial process at the expense of arbitration by raising the issue in its initial motion to dismiss. This finding is consistent with other courts' holdings that a defendant does not waive the affirmative defense of a binding arbitration provision by initially raising the issue in (1) an answer, Kessler, Merci, and Lochner v. Pioneer Bank, 101 Ill. App. 3d 502 (Ill. App. Ct. 1981), (2) a challenge to venue, Brennan v. Kenwick, 97 Ill. App. 3d 1040 (Ill. App. Ct. 1981), or (3) a 12(b) motion to dismiss. Benjamin-Coleman v. Praxair, Inc., 216 F. Supp. 2d 750 (N.D. Ill. 2002). Nor does the pure act of removing a case to federal court constitute a ground for a waiver. Kennedy v. Commercial Carriers, Inc., 258 Ill. App. 3d 939 (Ill. App. Ct. 1994).

Likewise, we do not agree with Halim's contention that Gatsby waived the right to arbitrate when it negotiated the refund for the $55,000 clock. At the time Gatsby accepted the return of the clock, Halim had not yet initiated litigation, so Gatsby would not yet have been able to invoke the protections offered by the arbitration clause and the FAA. We accordingly find that by raising the arbitration defense in its first responsive pleading to Halim's complaint, Gatsby did not act "in a manner which is inconsistent with the arbitration clause," Kennedy, 258 Ill. App. 3d at 943, and did thus not waive its right to invoke the arbitration clause of the Auction Agreement. This suit

should thus be stayed pursuant to 9 U.S.C. §§ 2 and 3, with the remaining motions denied as premature.

## CONCLUSION

Based on the foregoing analysis, Gatsby's motion to stay the proceedings pending arbitration is granted, while its motions to dismiss are denied.

/s/ Charles P. Kocoras
Charles P. Kocoras
Chief Judge
United States District Court

Dated: MAR - 4 2004